**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ANDY GIL, and RAFAEL HERNANDEZ, on
behalf of themselves and all other similarly
situated;

       Plaintiffs,

    v.

PIZZAROTTI, LLC; ATLANTIC
CONTRACTING OF YONKERS, INC.; JOEL
ACEVEDO; IGNAZIO CAMPOCCIA;
GIACOMO DI'NOLA a/k/a GIACOMO DI
NOLA; JOHN DOE CORPORATIONS 1-10
and RICHARD ROES 1-10;

       Defendants.

**Case No. 19-CV-03497 (MKV)**

DEFENDANTS' MEMORANDUM
OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR
CERTIFICATION OF THEIR NEW
YORK LABOR LAW CLAIMS AS A
CLASS ACTION PURSUANT TO
RULE 23

John Ho
COZEN O'CONNOR
3 WTC, 175 Greenwich Street, 55th Floor
New York, New York 10007
Telephone:    (212) 883-4927
Facsimile:    (866) 202-1728
jho@cozen.com

*Attorneys for Defendants*
*Pizzarotti LLC, Ignazio Campoccia,*
*and Giacomo Di'Nola*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

PRELIMINARY STATEMENT ..................................................................................... 1

BRIEF FACTUAL BACKGROUND............................................................................. 2

BRIEF PROCEDURAL BACKGROUND ..................................................................... 4

GOVERNING LEGAL STANDARD ............................................................................ 5

ARGUMENT .................................................................................................................. 7

I.      Plaintiffs Fail To Meet Rule 23 Requirements .................................................. 7

      A.     Rule 23 Legal Standard........................................................................... 7

      B.     Plaintiffs' Claims Fail To Satisfy The Commonality And Typicality Requirements ........................................................................ 8

      C.     Plaintiff Is Not An Adequate Class Representative Nor Is Any Foreman An Appropriate Class Member ........................................ 14

      D.     Plaintiffs Fail To Meet The Requirements Of Rule 23(b)(3) ............. 16

            1.     Predominance........................................................................... 16

            2.     Superiority................................................................................ 17

II.     In The Alternative, The Court Should Limit Class Certification...................... 19

      A.     Class Certification, If Granted, Should Be Limited To Either Only General Laborers Or Only Tapers ......................................... 19

      B.     If A Class Is Certified, The Court Should Define Subclasses ............. 20

      C.     If A Class Is Certified, The Court Should Limit The Temporal Scope ............... 20

III.    The Court Should Not Certify A Collective Class Under The FLSA.............................. 21

IV.    PZ Defendants Should Not Pay For Notices.................................................... 22

CONCLUSION............................................................................................................. 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado v. GC Dealer Svcs. Inc.*,
511 F. Supp. 3d 321 (E.D.N.Y. 2021) ................................................................................15

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997)..............................................................................................................14

*Ansari v N.Y. Univ.*,
179 F.R.D. 112 (S.D.N.Y. 1998) ..........................................................................................8

*Callari v. Blackman Plumbing Supply, Inc.*,
307 F.R.D. 67 (E.D.N.Y. 2015).................................................................................5, 8, 16

*In re Currency Conversion Fee AntiTrust Litig.*,
229 F.R.D. 57 (S.D.N.Y. 2005) ............................................................................................8

*Dodge v. County of Orange*,
226 F.R.D. 177 (S.D.N.Y. 2005) ..........................................................................................5

*Ellersick v. Monro Muffler Brake, Inc.*,
2017 WL 1196474 (W.D.N.Y. March 31, 2017)................................................................18

*Fernandez v. Wells Fargo Bank, N.A.*,
2013 WL 4540521 (S.D.N.Y. Aug. 28, 2013)................................................................9, 10

*General Tel. Co. v. Falcon*,
457 U.S. 147 (1982)..........................................................................................................5, 7

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
239 F.R.D. 363 (S.D.N.Y. 2007) .....................................................................................8, 9

*Laumann v. National Hockey League*,
105 F. Supp. 3d 384 (S.D.N.Y. 2015)...................................................................................8

*MacIntyre v. Moore*,
335 F. Supp. 3d 402 (W.D.N.Y. 2018) ...............................................................................15

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)..................................................................................................9

*Menking ex rel. Menking v. Daines*,
287 F.R.D. 166 (S.D.N.Y. 2011) ..........................................................................................9

*In re MF Global Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) ............................................................5

*Moore v. Publicis Group SA*,
  2014 WL 11199094 (S.D.N.Y. May 15, 2014) ......................................18

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010), *cert denied*, 132 S. Ct. 368 (2011) ...............6, 17, 21

*Oedraogo v. A-1 Intern. Courier Svc., Inc.*,
  2014 WL 4652549 (S.D.N.Y. Sept. 18, 2014) ......................................13

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
  226 F.R.D. 456 (S.D.N.Y. 2005) ............................................................16

*Romero v. H.B. Automotive Grp., Inc.*,
  2012 WL 1514810 (S.D.N.Y. May 1, 2012) ......................................20, 21

*Ruiz v. Citibank, N.A.*,
  2015 WL 1254820 (S.D.N.Y. Mar. 19, 2015) ......................................10

*Saleem v. Corp Transp. Grp., Ltd.*,
  2013 WL 6061340 (S.D.N.Y. Nov. 15, 2013) ......................................12

*Saleem v. Corp. Transp. Grp., Ltd.*,
  854 F.3d 131 (2d Cir. 2017) ..................................................................12

*Scott v. Chipotle Mexican Grill, Inc.*,
  954 F.3d 502 (2d Cir. 2020) ....................................................................5

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ..............................................................9

*Traver v. Lowe's Home Ctrs., LLC*,
  Case No. 12 Civ. 3528 (AMD) (PK), 2016 WL 88016 (E.D.N.Y. March 1,
  2016) ....................................................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................6, 7

*Wang v. Hearst Corp.*,
  617 F. Appx 35 (2d Cir. 2015) ..............................................................19

*Zivali v. AT&T Mobility, LLC*,
  784 F. Supp. 2d 456 (S.D.N.Y. 2011) ....................................................22

**Statutes**

29 U.S.C. § 203 ............................................................................................15

LEGAL\54169847\1

Fair Labor Standards Act ..............................................................................................1

Fair Labor Standards Act ..............................................................................................3

FLSA ....................................................................................................................... *passim*

FLSA Section 216(b) ...................................................................................................5

New York Labor Law ..................................................................................................1

New York Labor Law ..................................................................................................1

NYLL .....................................................................................................1, 4, 13, 15

NYLL § 2 ..................................................................................................................15

**Other Authorities**

Fed. R. Civ. P. 23(b)(3).................................................................................5, 16, 17

Federal Rules 23(a) and 23(b).....................................................................................5

https://dol.ny.gov/independent-contractors.................................................................19

Rule 23 ................................................................................................................. *passim*

Rule 23(a)...............................................................................................7, 8, 16, 17

Rule 23(a)(2)......................................................................................................8, 9

Rule 23(a)(3).............................................................................................................8

Rule 23(b) .................................................................................................................7

Rule 23's ..............................................................................................................5, 6, 21

LEGAL\54169847\1

## INTRODUCTION

Defendants Pizzarotti LLC ("PZ"), Giacomo Di'Nola and Ignazio Campoccia (collectively, "**PZ Defendants**") respectfully submit this opposition to Plaintiffs' Andy Gil and Rafael Hernandez and thirty-nine opt-in plaintiffs (collectively, "**Plaintiffs**") Motion for Certification of their New York Labor Law Claims As A Class Action Pursuant to Rule 23 ("**Plaintiffs' Motion**").

## PRELIMINARY STATEMENT

Pizzarotti, LLC ("**PZ**") is a construction company that serves as a construction manager for numerous construction projects in New York and elsewhere.  Plaintiffs are employees of Atlantic Contracting of Yonkers ("**Atlantic**"), a subcontractor retained by PZ to provide carpentry and drywall finishing services (also referred to as "taping") on a large building construction project ("**Jardim Project**") for which PZ was acting as the general contractor.  Plaintiffs filed this suit against PZ Defendants for violations of New York Labor Law ("**NYLL**") and the Fair Labor Standards Act ("**FLSA**") claiming PZ is a joint employer of Plaintiffs.  PZ Defendants maintain that they did not, and never have, employed Plaintiffs, nor can they be considered under federal and/or state law a joint employer with Atlantic.  Accordingly, all Atlantic employees were independent contractors, not employees, of PZ.

Plaintiffs now seek to certify a class and collective action against PZ for the alleged NYLL and FLSA violations.  The Court should deny Plaintiffs' Motion.  Plaintiffs cannot meet the requirements of Fed. R. Civ. P. 23 because: (1) there is no common answer or evidence to the questions presented to the Court, (2) Plaintiff Andy Gil is not an appropriate class representative, (3) there is no predominate question of law or fact, and (4) a class action is not superior to other available methods for the fair and efficient adjudication of the controversy.

LEGAL\54169847\1

If, however, the Court determines that Plaintiffs have met their burden to certify a class and/or a collective action, the Court should reject Plaintiffs' proposed class definition.  Instead, the Court should either limit the class or create subclasses in the following ways: (1) due to the individualized nature of PZ Defendants' defenses, the class should be defined as only general construction workers who were employees of Atlantic on the Jardim Project between July 2018 and February 2019 *or* tapers who were employees of Atlantic on the Jardim Project between July 2018 and February 2019 with each class excluding any individual who worked as a foremen / supervisor; (2) in the alternative, the Court should certify a subclass of tapers and general laborers due to the complicated and individualized analysis of PZ Defendants' defense of the claims in regards to tapers with both subclasses excluding any foreman / supervisor; and (3) the temporal scope of any certified class should be limited to July 2018 through February 2019 in recognition of the credible evidence showing this to be the actual time period during which Atlantic worked on the Jardim Project.

Finally, assuming *arguendo*, the Court certifies this action, in whole or in part, Defendants respectfully request post-certification discovery for any class so certified under Rule 23 or 216 (b) of the Fair Labor Standards Act.

## BRIEF FACTUAL BACKGROUND

PZ is a construction company based in Italy which provides, among other things, construction management or general contracting services.[1]  (Pls.' 56.1 ¶ 1). PZ maintains an office in New York and, in September 2015, entered into a construction management agreement with

---

[1] In the Court's March 29, 2021 Decision and Order, it noted in footnote 1 that it generally cited to Plaintiffs' 56.1 Response Statement ("Pls. 56.1") for reliance on certain undisputed facts after carefully reviewing the parties 56.1 Statements and independently assessing the underlying record to determine whether material factual disputes exists. Accordingly, the Defendants cite to Pls. 56.1 to support relevant facts here which this Court relied on in its March 29, 2021 Decision and Order.  [ECF No. 101].

WC Realty LLC, the owner of a property located at 533-535 West 27th Street and 530-536 West 28th Street, New York, New York—i.e., the Jardim Project. (Pls.' 56.1 ¶ 4). As construction manager/general contractor, PZ was responsible for managing the entire Jardim Project's construction schedule, cost, quality, and safety.  As a general contractor, PZ was responsible for contracting all of the subcontractors needed to perform the necessary work based on the nature of the project, which included taper work.  (Pls.' 56.1 ¶¶ 6, 9).

As a construction manager, PZ oversaw the work progress of subcontractors, including but not limited to Atlantic.  (Pls.' 56.1 ¶ 11).  PZ and Atlantic are separate and distinct legal entities that entered into a written contract (the "**PZ-Atlantic Contract**") in late June 2018 for Atlantic to perform carpentry, taping,[2] and drywall services on the Jardim Project.  (Pls.' 56.1 ¶¶ 15, 19).  Upon information and belief, Atlantic is owned by Joel Acevedo and David Gonzalez.  (Pls.' 56.1 ¶ 75).

The PZ-Atlantic Contract is a labor services contract that required PZ to pay Atlantic $30.00 for each Atlantic employee's hour of labor for all labor Atlantic supplied and to supply materials.  (Pls.' 56.1 ¶ 20). This type of contact is called a "time and material contract" and is common in the construction industry.  The PZ-Atlantic Contract established, as other subcontractor agreements with PZ, that all work performed by Atlantic would be done as subcontractor, *i.e.,* an independent contractor.  (Pls.' 56.1 ¶ 11).  (See Declaration of John Ho ("Ho Decl."), Exhibit A ¶ 4).

Atlantic was responsible for hiring its own workers, and the foremen who supervised those workers on a day-to-day basis at the worksite. (Pls.' 56.1 ¶¶ 59, 61, 65).  Plaintiffs testified that

---

[2] A taper prepares sheetrock after it is installed so that the sheetrock can be painted.  Taping is also referred to as drywall finishing.

they learned that Atlantic was hiring through co-workers, friends, or other sources, but none of them learned about the work through PZ. (Pls.' 56.1 ¶¶ 35, 42-43, 45).

Atlantic hired both named Plaintiffs to work as tapers on the Jardim Project. During the course of Atlantic's time working on the Jardim Project, Plaintiff Gil became a foreman of the tapers and his job duties changed from performing taping work to supervision of tapers. (See Ho. Decl. Ex. B; Gil Tr. 136, ¶¶ 14-17, 20-23).[3]

## BRIEF PROCEDURAL BACKGROUND

Plaintiffs filed a Complaint on behalf of themselves and all others similarly situated against PZ Defendants along with Atlantic Contracting of Yonkers, the undisputed employer of Plaintiffs, alleging failure to pay overtime wages in violation of the FLSA and NYLL and wage statement and notice violations under NYLL. PZ Defendants filed a motion for summary judgment arguing that PZ did not employ the Plaintiffs and putative class members. By Decision and Order dated March 29, 2021, this Court denied PZ Defendants' motion for summary judgment, holding that there remained questions of fact as to whether PZ is a joint employer with Atlantic. The Court specifically noted, "[t]o make clear, the Court does not hold that the PZ Defendants were Plaintiff's employers. Rather, the Court finds only that there are genuine issues of material fact that preclude summary judgment on this issue." [ECF No. 119].

Plaintiffs filed the instant motion requesting that this Court certify a class and collective action under Rule 23 and Section 216(b) of the FLSA. In their Motion, Plaintiffs defined the class as "all individuals paid by Atlantic Contracting of Yonkers, Inc. to perform work at Pizzaroti's Jardim Project, located at 527 West 27th Street in Manhattan, during any part of the period March, 2018 through March, 2019." [ECF 135].

---

[3] Deposition transcripts attached to the Ho declaration are referred to as  "Last name of Deponent, Tr. (Transcript). __" followed by the applicable page number and corresponding paragraph(s).

## GOVERNING LEGAL STANDARD

### A.    Class Action Certification Standards

Plaintiffs' Motion seeks class certification under Federal Rules 23(a) and 23(b) and collective certification under 29 U.S.C. § 216(b).  However, a class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982).  Because the named Plaintiffs are asking to act for an entire absentee class, they must satisfy a heavy burden of proof, including demonstrating that the class is homogenous enough on the central issues of liability that the interests of absent class members and defendants are protected.  *See id.* at 1616.  S*ee also Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020) ("Rule 23's requirements of adequacy and typicality are intended to protect the due process rights of absent class members, which is not a consideration in a nonrepresentative action such as a collective action under § 216(b)."); *Callari v. Blackman Plumbing Supply, Inc.*, 307 F.R.D. 67 (E.D.N.Y. 2015) (explaining that in a Rule 23 class "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it").

This Court's determination under Rule 23 is a serious one, because, unlike in a conditionally-certified FLSA collective group comprised of opt-*ins*, a certified Rule 23 class includes individuals who have indicated no desire to be part of the action, but who will be bound by its results (good or bad).  *See* Fed. R. Civ. P. 23(b)(3); *see also Dodge v. County of Orange*, 226 F.R.D. 177, 186 (S.D.N.Y. 2005) (Under Rule 23, "the judgment, whether favorable or not, will bind all members who do not choose to opt out"); *In re MF Global Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 237 (S.D.N.Y. 2015) (finding that any putative class member "who does not opt out of the class 'is bound by the final disposition of the case'").  Indeed, this Court has not even certified this action as a collective action under 216(b) of the FLSA.  As such, Plaintiffs bear "the

burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010), *cert denied*, 132 S. Ct. 368 (2011). "Rule 23 requires that a proposed class action (1) be sufficiently numerous, (2) involve questions of law or fact common to the class; (3) involve class plaintiffs whose claims are typical of those of the class; and (4) involve a class representative or representatives who adequately represent the interests of the class." *Id.*

### B.   Class Action Certification Standards – Post *Dukes*

The Supreme Court issued its watershed decision on Rule 23 class certification in *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) in 2011. While *Dukes* involved different types of employment claims—*i.e.*, claims of discrimination by women in various retail stores, rather than allegations that individuals were not paid certain overtime wages—it definitively rejected the notion that all it takes in any overtime class action certification case is a common "question" such as "were all non-exempt employees paid overtime?" *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). Instead, in *Dukes*, the Supreme Court held that the Court can only certify a class action if the claims and experiences of all members of the putative class are such that they will be provided a common ***answer*** to that alleged common question for all members. As discussed below, there is no common answer to that question here.

In *Dukes*, the Supreme Court required that a "rigorous analysis" be performed, and that proof of "commonality" requires evidence of a common contention that "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 654 U.S. at 350. The Court made clear that what "matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather, the capacity of a classwide proceeding to

general *answers* apt to drive the resolution of litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  *Id*. (quotations omitted).  Thus, unless a common question is amendable to a common answer, any desired judicial economy will not be achieved by proceeding on a class basis and Plaintiffs' motion should be denied.

Ultimately in *Dukes*, the Court found there was no "glue holding the alleged *reasons* for all those decisions together," and thus the examination of all class members' claims failed to "produce a common answer to the crucial question *why was I disfavored*."  *Id*. (emphasis in original).  In this case, the "crucial questions" that will be presented—*i.e.*, "did *I* not get paid certain wages that *I* was owed?"; or "was there a reason that certain hours that *I* worked were not ultimately paid?"; or "did PZ exercise functional and formal control over individual class members to be considered a joint employer of them"—similarly fail to produce a common answer.  Thus, class certification here is inappropriate, and Plaintiffs' Motion should be denied in its entirety.

## ARGUMENT

### I.   Plaintiffs Fail To Meet Rule 23 Requirements

#### A.   Rule 23 Legal Standard

To certify a class under Rule 23, the plaintiff must demonstrate that the class and its representative meet each of the requirements under Rule 23(a) and one of the subsections of Rule 23(b).  Class certification may be granted only if the court is satisfied after a "rigorous analysis" that each of the Rule 23 requirements has been established.  *See Gen. Tel. Co. of Sw v. Falcon*, 457 U.S. 147, 161 (1982).  "The burden of proving each of the requisite elements of Rule 23 is on the party seeking certification, and failure to prove **any** element precludes certification."  *Ansari v N.Y. Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998) (emphasis added).  A class definition is overbroad when the class encumbrances persons who have not been harmed.  *See In re Currency*

*Conversion Fee AntiTrust Litig.*, 229 F.R.D. 57, 63 (S.D.N.Y. 2005) ("While a class may contain future members . . . an individual cannot be a putative class member if he suffers no injury or is not under imminent threat of injury.").  *See also Laumann v. National Hockey League*, 105 F. Supp. 3d 384, 401 (S.D.N.Y. 2015) (recognizing that class members do not belong in a case where the class members do not suffer an injury).

Rule 23(a) requires that Plaintiffs satisfy the following requirements:

(1) Numerosity (a class so large that joinder of all members is impracticable);

(2) Commonality (questions of law or fact common to the class);

(3) Typicality (named parties' claims or defenses are typical of the class); and

(4) Adequacy of representation (representatives will fairly and adequately protect the interests of the class)

*Callari v. Blackman Plumbing Supply, Inc.*, 307 F.R.D. 67, 74 (E.D.N.Y. 2015).

### B.  Plaintiffs' Claims Fail To Satisfy The Commonality And Typicality Requirements

"Rule 23(a)(2) requires that there are 'questions of law or fact common to the class' whereas Rule 23(a)(3) requires that the 'claims or defenses of the representative parties are typical of the claims and defenses of the class.'"  *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 370 (S.D.N.Y. 2007). "As a practical matter, the two requirements tend to merge in the Second Circuit's class certification inquiry" and "both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  *Id.* (*citing, General Tel. Co. v. Falcon,* 457 U.S. 147 (1982)).  *See also Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997). Commonality and typicality are only satisfied when "plaintiffs' grievances share common questions of law or fact ***and***

when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (emphasis added).

Plaintiffs wholly fail to determine any questions can be resolved by common ***answers*** from the putative class.

First, Plaintiffs fail to set forth a common plan or scheme by PZ involving failure to pay overtime. Simply having a number of individuals saying that they were not paid overtime on a particular occasion, or that extra hours were not compensated for on a particular occasion, is not enough. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405 (S.D.N.Y. 2015) ("However, class certification requires not only 'common questions,' but 'the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'"). It may be enough for a multi-plaintiff lawsuit containing separate, individual claims, but not for a class or collective action which by its very nature requires *representative* testimony on the assumption that every individual's circumstances are the same. *See Menking ex rel. Menking v. Daines*, 287 F.R.D. 166, 170-71 (S.D.N.Y. 2011) ("The commonality requirement under Rule 23(a)(2) refers to claims among members that are 'common to the class as a whole.' . . . Claims must present similar allegation based on the same factual scenario, giving rise to the same injury and the same or similar legal arguments.").

For example, in *Fernandez v. Wells Fargo Bank, N.A.,* 2013 WL 4540521, *5 (S.D.N.Y. Aug. 28, 2013), the court denied a Rule 23 motion to certify non-exempt employees because "[n]owhere in plaintiffs' papers do they cite a specific, concrete, management directive concerning plaintiffs' off-the-clock work or any purported requirement not to record hours worked." Acknowledging that declarations were submitted that provided certain "anecdotal evidence," the Court stated that the declarations were insufficient to constitute "significant proof of a general policy" to deny overtime pay. *Id.* at *6. Similarly, in *Ruiz v. Citibank, N.A.,* 2015 WL 1254820, *12 (S.D.N.Y. Mar. 19, 2015),

the court refused to certify a Rule 23 class, ruling that, while the record may support individual violations, "the record in its totality shows that Citibank's formal, companywide policies are entirely legal and appropriate, and that there is no evidence of a ***common plan or scheme*** to subvert those policies." (emphasis added).

Plaintiffs fail to offer evidence of a common, uniform, unlawful policy that impacted the entire putative class in the same manner, rather than anecdotal evidence establishing – at most – individualized claims on certain points. Importantly, Plaintiffs present no evidence that the PZ Defendants subjected Plaintiffs to any common policy or practice. Moreover, the PZ Defendants were not aware of any compensation policies or practices that Atlantic may have subjected to them. The contract between PZ and Atlantic established a $30 per hour rate for labor which well exceeded the applicable minimum wage with sufficient funds to cover any overtime requirements to Atlantic employees. (Pls.' 56.1 ¶ 20). Thus, PZ itself had no unlawful common policy and with respect to Atlantic had no real or constructive knowledge of its policies. In other words, any Atlantic unlawful common policy or procedure should not be imputed to PZ.

Second, Plaintiffs' own testimony undermines a commonality of experience among the putative class members. By way of example, Plaintiffs testified differently in that:

- Plaintiff Gil testified that, "[t]here were some [tapers] that left at 3:30. So whoever didn't want to work more overtime would stay – would leave early or would stay until 7:30 p.m," (Ho. Decl. Ex. B; Gil Tr. 91, ¶¶ 16-20), whereas opt-in Plaintiff Caesar Colchao testified that he "never worked 12 hours. That was too much work." (Ho Decl. Ex. C; Colchao Tr. 52, ¶¶ 9-10).

- Regarding tapers who complained about missing pay for certain hours to Atlantic, there is conflicting testimony on how complaints where handled. Plaintiff Gil testified that "if owed the money they would put it on the next paycheck." (Ho Decl. Ex B; Gil Tr. 114, ¶¶ 8-10) and that some of them received the money back (*Id.;* Tr. 114, ¶¶ 1-4) while Plaintiff Colchao testified that he "almost always" received his hourly rate for hours worked. (Ho. Decl. Ex. C; Colchao Tr. 38, ¶ 6). To the contrary, Plaintiff Hernandez testified that when he complained about

missing hours to Atlantic foreman Hector, nothing was done about it because he would "forget."  (Ho. Decl. Ex. D; Hernandez Tr. 49, 22-25; Tr. 50, ¶ 1).

- Plaintiff Gil testified that while employees as a whole were not obligated to work on  weekends, "whoever wants to work could work." (Ho Decl. Ex. B; Gil Tr. 98, ¶¶ 9-15).

- Plaintiff Hernandez testified that he only worked Sundays twice.  (Ho. Decl. Ex. D; Hernandez Tr. 83, ¶¶ 7-11).

- Plaintiff Colchao testified that he never worked past 5:30 pm.  (Ho Decl. Ex. C; Colchao Tr. 44, ¶ 1).

As reflected in this conflicting testimony, the Court would be compelled to conduct a mini-trial with respect to each class member to determine if that individual was subject to some breach of law by PZ Defendants, *e.g.,* the number of worked hours for which he or she was not compensated either straight time and/or overtime (if any) or if individual plaintiffs where not paid for all hours worked or if such deficiencies were corrected after notice.  Indeed, many, if not all other, construction workers, specifically tapers, could not have been subject to any common, purported violations of law if Plaintiffs' testimony is to be believed.  Simply put, representative testimony would not be appropriate given the differences in the record already.

Finally, the Court will need to determine whether Plaintiffs are even entitled to overtime pay, which requires an individualized, fact-intensive analysis.  On the merits, PZ intends to prove, *inter alia*, that the tapers were not entitled to overtime pay because they were independent contractors, not employees.  The determination as to whether an individual is an employee or an independent contractor requires a fact-intensive analysis that is not appropriate for class determination.

The Second Circuit applies the economic realities test to determine if a worker is an independent contractor or an employee. *See Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131 (2d Cir. 2017).  The economic realities test considers: (1) the degree of control exercised by the

11

employer over the workers; (2) the workers' opportunity for profit or loss and their investment in the business; (3) the degree of skill and independent initiative required to perform the work; (4) the permanence or duration of the working relationship; and (5) the extent to which the work is an integral part of the employer's business.  *Id.*

The economic realities analysis this Court will be tasked with is fact-intensive and, therefore, inappropriate for class determination.  *See Saleem v. Corp Transp. Grp., Ltd.*, 2013 WL 6061340 (S.D.N.Y. Nov. 15, 2013) (denying class certification because whether the plaintiffs were misclassified as independent contractors requires a fact-specific, worker-specific examination).  In other words, Plaintiffs' claims cannot be resolved through "generalized proof, but rather requires individualized examination into the extent of control" PZ Defendants exercised over individual Plaintiffs to the extent that such control differed from individual to individual and/or groups of employees such as between tapers and general laborers.  This issue is even more pronounced since Atlantic employed foreman to oversee Atlantic workers and some of these foremen testified about different levels of control even with respect to them.

By way of example, named Plaintiff Andy Gil testified that when he was promoted to foreman, PZ never exercised control over tapers' work, further proving that the Court will be tasked with individualized inquiries of control to determine joint employer status:

- "So when you and the tapers were working on a particular project, were you by yourself for most of the day… yes, we were." (Ho Decl. Ex. B; Gil Tr. 129, ¶¶ 7-16)

- "So if you had questions, if you or any of the tapers that you were working with had questions or you were doing do the work, who would you have talk to?" "Between Rafael and I, Carlos or Caesar." *(Id.*; Tr. 132, ¶¶ 1-7).

- Testifying that when he [Gil] was promoted to foreman, he would tell the workers which project to work on and "everything that needed to be done." *(Id.*: Tr. 133, ¶¶ 5-9).

- Testifying that he [Gil] got a lot of questions from laborers and tapers when he was a foreman and he was always able to answer those questions himself.  There was not a single question he could not answer from tapers as a foreman. *(Id.* Tr. 134, ¶¶ 14–20).

- Testifying that none of the tapers he supervised ever needed help or direction in performing their duties.  (*Id.;* Tr. 138, ¶¶ 18-22).

- Testifying that PZ instructed him [Plaintiff Miranda] what employees needed to do and needed to be.  (Ho. Decl. Ex. E; Miranda Tr. 39, ¶¶ 5-11).

- Testifying that he [Plaintiff Colchao] never had work questions.  (Ho. Decl. Ex.C; Colchao Tr. 56, ¶¶ 11-22).

This Court has recognized that the factual idiosyncrasies involved in determining whether a plaintiff is an employee or independent contractor undermine commonality in class certification analysis.  For example, in *Oedraogo v. A-1 Intern. Courier Svc., Inc.*, 2014 WL 4652549 (S.D.N.Y. Sept. 18, 2014), this court denied class certification because the question of whether the putative class members were employees or independent contractors could only be determined on an individual basis.  The court explained that "the degree of control actually exerted over a workers' schedule is a major factor in determining whether he is an employee under the NYLL."

Here, too, the putative class members' schedules—and therefore their individual employment status—can only be determined on an individual basis or at best between different smaller groups of individuals than Plaintiffs' seek to certify.  By way of example, in addition to testimony set forth above, various Atlantic employees provided different testimony regarding control of their schedules or the supervision of their work:

- Plaintiff Colchao testified that, although he was originally given a schedule, he never worked those purported hours because it was "too much work."  (*Id.;* Tr. 40, ¶¶ 22-42).  Colchao also stated that the tapers could choose to leave early or stay later and that "it depends on the person."  (*Id.;* Tr. 44, ¶¶ 9-11).

- Andy Gil testified that, "there were some [tapers] that left at 3:30.  So whoever didn't want to work more overtime would stay - - would leave early or would stay until 7:30."  (Ho Decl. Ex. B; Gil Tr. 91, ¶¶ 6-21).

13

- Rafael Hernandez testified that he was not given a choice as to his work hours. (Ho. Decl. Ex. D; Hernandez Tr. 86; ¶¶ 22-87).

In addition, there is testimony that Atlantic maintained certain employment records affirmatively stating that Atlantic was the employer, including, but not limited to, Medicaid purposes for at least some employees. (Ho. Decl. Ex. B; Gil Tr. 57, ¶¶ 23-25, Tr. 58, ¶¶ 1-13). As the Court stated in its March 29, 2021 Decision and Order, the maintenance of employment records is an important factor in the joint employer analysis. [ECF 119]. This factual dissimilarity between certain Plaintiffs compared to others also highlights the need for individualized inquiries disfavoring class treatment. A similar factual dissimilarity existed in that some Plaintiffs filed for workers' compensation only against Atlantic. (Ho Decl. Ex. D; Hernandez Tr. 45, ¶¶ 21-23).

Based on such testimony, the Court should deny class certification because determination as to the putative class members' employment status requires an individualized determination not appropriate for class treatment.

C. **Plaintiff Is Not An Adequate Class Representative Nor Is Any Foreman An Appropriate Class Member**

"A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (internal quotes omitted). Here, Plaintiff Gil is not an adequate class representative. Gil testified that he served as a foremen to the tapers. Put simply, Gil was a ***supervisor*** to the tapers. In his own words, Gil testified that "as a foreman [he] didn't actually have to physically do taper's work, it was more supervision," and he "would use [his] judgment and supervise the tapers with less experience more than the tapers with more experience." (Ho. Decl. Ex. B; Gil Tr. 136, ¶¶ 20-23). Other Plaintiffs clearly testified that the foreman's primary responsibility was organizing, supervising and making sure the employees did their jobs and giving directions on how to complete the job. (Ho. Decl. Ex. C; Colchao Tr. 31, ¶¶ 7-18).

14

Based on such testimony, Plaintiff Gil, and any other Plaintiff or putative class member acting as a foreman such as Plaintiff Hector Miranda (Ho Decl. E; Tr. 33, 34 ¶¶ 23-25, 1-2), could be considered an "employer" under applicable law.  The FLSA defines an employer as "any *person* acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203 (emphasis added).  The NYLL defines employer as "any *person* . . . employing an individual in any occupation, trade, business or service." NYLL § 2 (McKinney) (emphasis added).  In other words, an individual person acting as an employer by overseeing work, setting work schedules, answering day to day questions, etc. would have personal liability under the FLSA and NYLL.  Indeed, Plaintiffs seek to impose personal liability on Giacomo Di Nola and Ignazio Campoccia exactly on this basis.

To the extent Gil behaved as an employer, he himself arguably became liable to the putative class members for their alleged unpaid overtime as well as any Plaintiff who worked as a foreman. In *MacIntyre v. Moore*, 335 F. Supp. 3d 402 (W.D.N.Y. 2018), the court refused to dismiss an individual defendant, explaining that he could be an "employer" under the FLSA based on his role as supervisor.  Similarly, in *Alvarado v. GC Dealer Svcs. Inc.*, 511 F. Supp. 3d 321 (E.D.N.Y. 2021), the court held that the plaintiffs' supervisor could be held individually liable for wage and hour violations based on his supervisory duties acting "directly or indirectly in the interest of an employer in relation to an employee."

Therefore, Gil is not an appropriate class representative: his status as supervisor/foreman of Atlantic employees conflicts with his legal duty to the class, as explained above.  *See e.g., Callari v. Blackman Plumbing Supply, Inc.*, 307 F.R.D. 67 (E.D.N.Y. 2015) (explaining that in a Rule 23 class "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it").

This logic would apply equally for the proposition that any individual who served as a foreman is not properly within the overbroad class as defined by Plaintiffs as lack of commonality and an inherent conflict of interests.

**D.**   **Plaintiffs Fail To Meet The Requirements Of Rule 23(b)(3)**

Even if Plaintiffs satisfy all requirements under Rule 23(a), which they do not, Plaintiffs cannot satisfy the requirements for class certification under Rule 23(b)(3).  "Under Rule 23(b)(3) a class may be certified if, in addition to the requirements of Rule 23(a), the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 465 (S.D.N.Y. 2005) (quoting Fed. R. Civ. P. 23(b)(3)).

1.   *Predominance*

The predominance requirement under Rule 23(b)(3) is "more demanding" than the commonality requirement of Rule 23(a).  *Id.* (citing *Moore v. PaineWebber, Inc.*, 506 F.3d 1247 (2d Cir. 2002)).  "Predominance will be established if 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualize proof.'  Consequently, to determine whether common questions of law or fact predominate, a court must focus 'on the legal or factual questions that qualify each class member's case as a genuine controversy . . . [and] test [] whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Id.*

The Court should deny Plaintiffs' motion for class certification because individual issues predominate over those common to the class and, therefore, is not appropriate for class treatment.  In *Myers v. Hertz Corp.*, 624 F.3d 537 (2nd Cir. 2010), the Second Circuit affirmed the District Court's

order denying class certification for this exact reason.  In *Myers*, the plaintiffs filed claims alleging violations of wage and hour law, specifically that they were denied overtime pay.  The Second Circuit explained that, "whether plaintiffs were entitled to overtime under the FLSA . . . is a complex, disputed issue, and its resolution turns on exemption, which in turn will require the district court to decide a number of subsidiary questions involving whether plaintiffs fall within the Labor Department's criteria for 'employee[s] employed in a bona fide executive . . . capacity.'" *Id*. (quoting 29 U.S.C. § 213(a)(1)).

Here, too, whether Plaintiffs are employees entitled to overtime requires an individualized analysis of subsidiary questions.  As explained above, Plaintiffs' claims cannot be resolved through "generalized proof, but rather requires individualized examination into the extent of control" PZ Defendants exercised over individual Plaintiffs and to the extent that such control differed from individual to individual and/or groups of employees such as between tapers and general laborers. *See Traver v. Lowe's Home Ctrs., LLC*, Case No. 12 Civ. 3528 (AMD) (PK), 2016 WL 88016 (E.D.N.Y. March 1, 2016) (denying class certification because question of whether the plaintiffs are employees or independent contractors cannot be satisfied through generalized proof as required by Rule 23(b)(3)).  For the differences set forth herein, this element cannot be met.

### 2.   *Superiority*

Plaintiffs must also show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  As explained above, if certified, the putative class would require individual "mini trials" to determine their entitlement to overtime and PZ Defendants' liability for said overtime.  This factor alone confirms that class treatment is not superior to other available methods for adjudicating the controversy at hand.  *See Moore v. Publicis Group SA*, 2014 WL 11199094 (S.D.N.Y. May 15, 2014) (explaining that a class

action would not fairly and efficiently adjudicate the claims before the court where each class member would require an individual "mini trial").

Furthermore, Plaintiffs' arguments attempting to prove superiority are inapplicable.  First, Plaintiffs argue that courts will hold that a class action is superior where members are aggrieved by the same policy.  As set forth above, there was no uniform PZ policy in place regarding pay or pay methods.  Plaintiffs themselves undermine their own argument in their deposition testimony even in regard to Atlantic pay policies.  More than one Plaintiff testified that some Atlantic employees had their complaints regarding their pay resolved (although none directly with the PZ Defendants).  Gil testified that, "if owed the money they would put it on the next paycheck."  (Ho Decl. Ex. B; Gil Tr. 114, ¶¶ 8-10) and that "Joe would, you know, make up for the hours that they were missing." (*Id.;* Tr. 115, ¶¶ 9-12) .

Second, Plaintiffs' concern about contradictory decisions if Plaintiffs were forced to bring individual claims is pure conjecture, and not based in any law or reality.  Indeed, if this were a real concern, every class action would be certified.  Requests to certify a class are regularly denied and in many of those situations, individual claims could result in differing outcomes.  Indeed, many requests to certify a class are denied for this very reason – the putative class members require individualized analyses, which may result in different outcomes.  *See e.g.*, *Ellersick v. Monro Muffler Brake, Inc.*, 2017 WL 1196474 (W.D.N.Y. March 31, 2017) (denying class certification because the question before the court regarding the plaintiff's entitlement to overtime pay is a "highly individualized" that would predominate over the entire case); *Wang v. Hearst Corp.*, 617 F. Appx 35 (2d Cir. 2015) (affirming district court's decision denying certification of class because question of employment status of putative class members was a highly individualized inquiry and therefore common questions did not predominate over individual ones).

Here, because there are distinct groups of workers performing different duties and arguably subject to different levels of control, the result could be that certain workers could be deemed employees while others could be held to be independent contractors. For example, under New York Labor one of the factors determining independent contractor status is who provides the equipment and tools. (See https://dol.ny.gov/independent-contractors). Tapers testified that they owned and used their own equipment when performing services at the Jardim Project. (Ho Decl. Ex. B; Gil Tr. 68, ¶¶ 16-25; Ho Decl. Ex. C; Colchao Tr. 26, ¶¶ 11-16). As this fact may be applicable to tapers but not general laborers, this is the kind of individualized inquiry that could legally justify one finding for certain individuals but not another.

## II.   In The Alternative, The Court Should Limit Class Certification

Should the Court find that class and/or collective certification are appropriate, the class should be limited based on the putative class members' job title, the dates of the PZ-Atlantic relationship, or, in the alternative, the Court should define subclasses.

### A.   Class Certification, If Granted, Should Be Limited To Either Only General Laborers Or Only Tapers

Plaintiffs' proposed class is clearly overbroad. Plaintiffs request that this Court certify a class encompassing "all individuals paid by Atlantic Contracting of Yonkers, Inc. to perform construction work at Pizzarotti, LLC's Jardim Project." The class, however, should be limited to just those individuals hired by Atlantic to be tapers on the Jardim Project *or* just the general construction workers. Atlantic provided various groups of employees with different skill sets for different purposes throughout the time it worked on the Jardim Project. Plaintiffs Andy Gil and Rafael Hernandez, specifically, were tapers. Atlantic also employed carpenters and general construction laborers. The tapers are highly skilled workers with decades of experience and usually doing Level 5 taping work which is the most complicated type. (Ho. Decl. Ex. D; Hernandez Tr. 24, ¶¶ 20-24; Tr.

19

35, ¶ 1-2); (Ho. Decl. Ex. C; Calchao Tr. 26, ¶¶ 11-16). They provide their own tools and did not need direction to complete their job.  As explained in detail above, PZ intends to show that the tapers, specifically, are independent contractors not entitled to overtime pay, which requires independent proof and is an individualized defense, as explained above.

Additionally, for the same reason Gil is not an appropriate class representative, Gil, along with all other foremen, should be excluded from any class definition.  As foremen, and therefore supervisors who have potential personal liability, of the Atlantic employees, their claims present unique challenges and arguments that should not be resolved on a class basis.  These individuals have a conflict of interest in their roles supervising Atlantic employees on a day-to-day basis at the job site.

If this Court were so inclined to certify a class, the Court should limit the class definition to either just tapers *or* just generalized laborers with both classes excluding foremen.

### B.     If A Class Is Certified, The Court Should Define Subclasses

PZ Defendants maintain that Plaintiffs' proposed class definition is overbroad because, *inter alia*, there are different factors and defenses that must be assessed based on the job position of the specific plaintiff.  While PZ maintains this fact alone makes Plaintiffs' case inappropriate for class treatment, should the Court believe class certification warranted, the PZ Defendants respectfully submit that the Court should break up the class definition into subclasses to assist the Parties and the Court in organization of the case.  *See Romero v. H.B. Automotive Grp., Inc.*, 2012 WL 1514810 (S.D.N.Y. May 1, 2012) ("[A]n overbroad proposed collective action may be amenable to subclasses.").  Specifically, tapers should be treated as a subclass due to the individualized analysis required to apply PZ Defendants' defenses while general laborers should be the other subclass.

### C.     If A Class Is Certified, The Court Should Limit The Temporal Scope

Plaintiffs request certification of a class that encompasses the time period of March 2018 through March 2019.  However, it is a factual impossibility that any putative class member worked

on the Jardim Project before July 2018.  Atlantic and its employees did not begin work on the Jardim

Project until approximately July 2018.  (Ho. Decl. Ex. F; Di'Nola Tr. 11, ¶¶ 11-16, Tr. 15, ¶¶ 13-17).

Specifically, the PZ-Atlantic Contract became effective only on June 28, 2018 and contemplated that

Atlantic was to commence work on the Jardim Project no later than July 2, 2018.  (Ho Decl. Ex. A).

Moreover, on July 2, 2018 Joel Acevedo, co-owner of Atlantic informed Ignazio Campoccia, an

individual employed by PZ, by email that Atlantic "guys are ready to start work."  (Ho Decl. Ex. G).

The record is devoid of any checks issued from PZ to Atlantic before July 2018 nor has any Plaintiff

testified that they worked without pay prior to July 2018 which also defies common sense.

Accordingly, there is no credible evidence in the record that shows PZ and Atlantic have ever

worked together prior to or after Plaintiffs worked on the Jardim Project from July 2018 through

February 2019.  Therefore, if the Court certifies a class, the Court should limit the temporal scope of

the class to July 2018 through February 2019.

### III.    The Court Should Not Certify A Collective Class Under The FLSA

Rule 23's requirements for class certification do not apply to the certification of a collective

action under the FLSA.  *See Romero v. H.B. Automotive Grp., Inc.*, 2012 WL 1514810 (S.D.N.Y.

May 1, 2012).  The Second Circuit has explained that, in determining whether a collective action

should proceed, courts should determine "whether the plaintiffs who have opted in are in fact

'similarly situated' to the named plaintiffs."  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).

If the Court determines that the opt-in plaintiffs are not similarly situated, then the opt-in plaintiffs'

claims should be dismissed.  *Id.*  In considering certification of a collective action, the Court "must

apply a more 'stringent standard' of proof in determining whether plaintiffs are similarly situated for

the purposes of the FLSA." *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011).

In *Zivali*, the Court denied certification of an FLSA collective action.  First, the Court

explained that the fact that the putative collective members track their hours using the same methods

does not demonstrate that the plaintiffs are similarly situated for the purpose of a FLSA collective action. *Id.* at 463. The *Zivali* Court also explained that the plaintiffs "must demonstrate that the 'practices' and 'culture' of which they complain are sufficiently uniform and pervasive as to warrant class treatment." *Id*. The plaintiffs in *Zivali* provided inconsistent testimony regarding whether certain time was compensated and management expectations. On this basis, the *Zivali* Court declined to certify a collective action, finding that the plaintiffs were not similarly situated with respect to their factual and employment settings.

Similarly here, Plaintiffs' testimony outlined above demonstrates that they are not similarly situated. By way of example, as explained above, Gil testified that some Atlantic employees had their pay issues resolved. (Ho Decl. Ex. B; Gil Tr. 114, ¶¶ 8-10; Tr. 115, ¶¶ 9-12).

## IV.    PZ Defendants Should Not Pay For Notices

Lastly, Plaintiffs argue that PZ should pay for class notice because it did not maintain employment records required as by law. This determination, however, presupposes the exact issue this Court is tasked with determining: whether PZ was the employer of the Plaintiffs. PZ maintains it did not, nor has it ever, employed the Plaintiffs and, therefore, is not subject to employment record-keeping requirements. The Court must determine Plaintiffs' employment status as it relates to PZ Defendants before punishing PZ Defendants for not complying with laws applicable only to employers. This request is a significant deviation from the standard rule that parties bear their own costs and expenses during litigation and should be rejected. Furthermore, as Plaintiffs note in their moving papers, this action currently consists of two named Plaintiffs and thirty-nine opt-in plaintiffs and thus collectively should have the resources to pay for the notice. Nothing in their moving papers suggests otherwise. Even assuming, *arguendo*, the Court grants notice, the PZ Defendants respectfully request an opportunity to negotiate over its contents and/or submit its own version of the notice to the Court for consideration for whatever appropriate class the Court deems

22

fair and reasonable.  For example, the proposed notice does not explain to class members what obligations they might have at trial or to sit for a deposition if the Court grants post certification discovery.

## **CONCLUSION**

For the reasons set forth above, PZ Defendants respectfully request that this Court deny Plaintiffs' Motion in its entirety.  PZ Defendants additionally request that, if the Court certifies a class or collective, that the Court also permit PZ Defendants to engage in post-certification discovery and negotiate and/or submit an alternative notice pursuant to 216(b) of the FLSA. Assuming, *arguendo*, the Court grants Rule 23 certification, the PZ Defendants respectfully request it do so on based on discrete job titles as set forth above and/or subclasses based on job titles within the temporal scope of July 2018 through February 2019.

Dated: September 9, 2021
     New York, New York

               Respectfully submitted,

               COZEN O'CONNOR

               By: _____/s John Ho
               John Ho
               3 WTC, 175 Greenwich Street, 55th Floor
               New York, New York 10007
               jho@cozen.com;

23