USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/31/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDY GIL and RAFAEL HERNANDEZ, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>PIZZAROTTI, LLC., ATLANTIC CONTRACTING OF YONKERS, INC., JOEL ACEVEDO, IGNAZIO CAMPOCCIA, GIACOMO DI'NOLA a/k/a GIACOMO DI NOLA, JOHN DOE CORPORATIONS 1-10, and RICHARD ROES 1-10,<br><br>Defendants, | 1:19-cv-03497-MKV<br><br>OPINION AND ORDER DENYING MOTION TO CERTIFY NEW YORK LABOR LAW CLAIMS AS A CLASS ACTION AND GRANTING MOTION TO CERTIFY FAIR LABOR STANDARDS ACT CLAIMS AS A COLLECTIVE ACTION |

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs Andy Gil and Rafael Hernandez, now joined by about forty opt-in plaintiffs (collectively, "Plaintiffs"), bring this putative class or collective action asserting claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiffs have sued Atlantic Contracting of Yonkers, Inc. ("Atlantic"), its co-owner Joel Acevedo, (collectively, the "Atlantic Defendants"), and three other defendants: Pizzarotti LLC ("PZ"), Giacomo Di'Nola, and Ignazio Campoccia (collectively, the "PZ Defendants"). Plaintiffs are former employees of Atlantic, which was retained by PZ as a subcontractor in connection with a construction project for which PZ served as the general contractor (the "Jardim Project"). Plaintiffs move to certify their NYLL claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and to certify their claims under the FLSA as a collective pursuant to section 216(b) of the FLSA.

In support of their motion, Plaintiffs submit a memorandum of law, (Pl. Br. [ECF No. 139]), the Declaration of Juan Carlos Juarez, a Carpenter who worked at the Jardim Project, (Juarez Decl. [ECF No. 96]), the Declaration of Misael Portillo, a Carpenter who worked at the

1

Jardim Project, (Portillo Decl. [ECF No. 97]), the Declaration of Monico Familia, a Sheetrocker who worked at the Jardim Project, (Familia Decl. [ECF No. 98]), the Declaration of Nelson Sarabia, a Taper who worked at the Jardim Project, (Sarabia Decl. [ECF No. 99]), the Declaration of Darwin Aguirre, a Carpenter who worked at the Jardim Project, (Aguirre Decl. [ECF No. 107]), and the Declaration of David Harrison, counsel for Plaintiffs, (Harrison Decl. [ECF No. 136]).  Plaintiffs have also submitted exhibits with the Declaration of David Harrison, including: Selected pages of the Transcript of the December 18, 2019 Deposition of Defendant Ignazio Campoccia ("Harrison Decl. Ex. E Campoccia Tr."); Selected Pages of the Transcript of the January 9, 2020 Deposition of Plaintiff Andy Gil ("Harrison Decl. Ex. G Gil Tr."); Selected Pages of the Transcript of the January 29, 2020 Deposition of Plaintiff Rafael Hernandez ("Harrison Decl. Ex. F Hernandez Tr."); Selected Pages of the Transcript of the January 9, 2020 Deposition of Plaintiff Caesar Colchao ("Harrison Decl. Ex. H Colchao Tr."); and Selected Pages of the Transcript of the February 20, 2020 Deposition of Plaintiff Hector Miranda ("Harrison Decl. Ex. I Miranda Tr.").

In opposition to Plaintiffs' Motion, Defendants submit a memorandum of law, (Def. Opp'n [ECF No. 140]), and the Declaration of John Ho, counsel for Defendants, (Ho Decl. [ECF No. 141]).  Defendants have also submitted exhibits to the Declaration of John Ho, including: Selected Pages of the Transcript of the January 9, 2020 Deposition of Plaintiff Andy Gil ("Ho Decl. Ex. B Gil Tr."); Selected Pages of the Transcript of the January 9, 2020 Deposition of Plaintiff Caesar Colchao ("Ho Decl. Ex. C Colchao Tr."); Selected Pages of the Transcript of the January 29, 2020 Deposition of Plaintiff Rafael Hernandez ("Ho Decl. Ex. D Hernandez Tr."); Selected Pages of the Transcript of the February 20, 2020 Deposition of Plaintiff Hector Miranda ("Ho Decl. Ex. E Miranda Tr."); and Selected Pages of the Transcript of the October 30, 2019

Deposition of Defendant Giacomo Di'Nola ("Ho Decl. Ex. F Di'Nola Tr."). Plaintiffs filed a reply brief. (Pl. Reply [ECF No. 144]).

For the following reasons, Plaintiffs' Motion to certify their NYLL claims as a class action pursuant to Rule 23 is denied and Plaintiffs' Motion to certify an FLSA collective pursuant to section 216(b) of the FLSA is granted.

## BACKGROUND

### I. Factual Background

PZ is a global construction company that was hired to serve as the construction manager, or general contractor, to perform construction work at Pizzarotti, LLC's Jardim Project, which was located at 527 West 27th Street in Manhattan (the "Jardim Project"). *See Gil v. Pizzarotti, LLC*, No. 1:19-CV-03497-MKV, 2021 WL 1178027, at *1 (S.D.N.Y. Mar. 29, 2021). In connection with the Jardim Project, PZ entered into a subcontractor agreement with Atlantic for carpentry, drywall, and taping (*i.e.*, preparing sheetrock to be painted) services. *Id.* at *2. Named Plaintiffs Andy Gil and Rafael Hernandez are two construction workers who were hired by Atlantic to work on PZ's Jardim project in March and April (respectively) of 2018. (Harrison Decl. Ex. G Gil Tr. 27:14–18, 57:2–9; Harrison Decl. Ex. F Hernandez Tr. 26:17–27:6).

### II. Procedural History

On April 19, 2019, Plaintiffs filed this putative class and collective action on behalf of themselves and all others similarly situated. (Compl. [ECF No. 1]). Thereafter, with leave of the Court, Plaintiffs filed the First Amended Complaint. (First Amended Complaint ("FAC") [ECF No. 30]). Plaintiffs bring claims against both the subcontractor, Atlantic, and the general contractor, PZ Defendants, for violations of the FLSA and NYLL. (FAC ¶¶ 12–21). Plaintiffs allege that Defendants failed to pay overtime premiums in violation of the FLSA and the NYLL,

3

(FAC ¶¶ 73–84), and failed to pay for all hours worked and to provide wage notices and wage statements as required by section 1951(1) and (3) of the NYLL.  (FAC ¶¶ 85–90).  PZ Defendants answered the Complaint and filed cross claims against the Atlantic Defendants. [ECF No. 24].  After Plaintiffs filed this case, forty co-workers chose to join the litigation and filed with the court consents to litigate their claims pursuant to the FLSA (the "Opt-in Plaintiffs").  [ECF Nos. 37, 38, 41, 42, 43, 46, 47, 48, 49, 51, 52, 104, 118, 122, 127, 129, 132, 145].

On February 5, 2020, this case was reassigned to me.  Thereafter, the Court held a Post-Discovery Conference.  [ECF No. 77].  Counsel for all parties were in attendance.  The parties advised that, other than potential expert discovery on damages in the event a class is certified, discovery was complete.  [ECF No. 77].

After that conference, the Court granted motions by both Plaintiffs and PZ Defendants for default judgment as to liability against the Atlantic Defendants.  [ECF Nos. 114, 115].  However, the Court deferred a ruling on damages until after a trial on Plaintiffs' claims.  [ECF Nos. 114, 115].  Subsequently, the Court denied the Motion of PZ Defendants for summary judgment on the grounds that issues of fact existed as to whether PZ Defendants were employers of Plaintiffs under the FLSA.  *See Gil*, 2021 WL 1178027, at *14.

Plaintiffs now seek to certify a Rule 23 Class of all individuals paid by Atlantic to perform construction work at the Jardim Project, during any part of the period from March 2018 through March 2019 (the "Class Period"), excluding any immediate family member of the individual defendants (Joel Acevedo, Ignazio Campoccia, and Giacomo Di'nola).  Plaintiffs also seek to certify an FLSA Collective.

## FEDERAL AND STATE LABOR LAW

Under the FLSA, subject to certain exceptions, an employee who works more than 40 hours in a workweek must "receive[ ] compensation for his [or her] employment in excess of [40] hours ... at a rate not less than one and one-half times the regular rate at which he [or she] is employed." 29 U.S.C. § 207(a)(1). Similarly, the NYLL generally provides for "one and one-half times the employee's regular rate" when the employee works more than 40 hours in a workweek. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; *see Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 519 (S.D.N.Y. 2013).

Under the NYLL, all employers must "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing," *inter alia*, "the rate or rates of pay." N.Y. Lab. Law § 195(1)(a). "For all employees who are not exempt from overtime compensation," the notice must include "the regular hourly rate and overtime rate of pay." N.Y. Lab. Law § 195(1)(a).

## DISCUSSION

I. **The Court Denies The Motion Of Plaintiffs To Certify A Rule 23 Class Action**

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). To come within the exception, a party seeking to maintain a class action "must affirmatively demonstrate his compliance with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) (quoting *Wal-Mart Stores*, 564 U.S. at 350) (internal quotation marks omitted). A district court has discretion in deciding whether to certify a class. *Cent. States Se. &*

*Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007). The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met. *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

Under Rule 23, a class may be certified only if the proposed class satisfies the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1)–(4); *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). The Second Circuit has also recognized that Rule 23(a) contains an "implied requirement of ascertainability," *i.e.*, a requirement that the class be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (quoting 7A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 1760 (3d ed. 1998)); *see also In re Kind LLC "Healthy & All Natural" Litig.*, 337 F.R.D. 581, 594 (S.D.N.Y. 2021).

After satisfying Rule 23(a), the plaintiff must also prove that one of the three subcategories of permissible class actions under Rule 23(b) fit the particular case. *See* Fed. R. Civ. P. 23(b). Plaintiffs solely rely on the third subcategory, Rule 23(b)(3), which allows for certification when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

6

### A. Plaintiffs Have Not Established By A Preponderance Of The Evidence That Common Issues Predominate

The Court need not decide whether Plaintiffs have met the requirements of Rule 23(a) because it is clear from the record that they have not satisfied the requirements of Rule 23(b)(3). To satisfy the requirements of Rule 23(b)(3), Plaintiffs must establish by the preponderance of the evidence that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The predominance requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers*, 624 F.3d at 547 (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). This test is more demanding than that under Rule 23(a). *Johnson*, 780 F.3d at 138 (quoting *Comcast Corp.*, 569 U.S. at 33). The court must consider "the elements of the claims and defenses to be litigated," as well as "whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief." *Id.* (citation omitted). The Court also must consider whether "the common issues can profitably be tried on a classwide basis, or whether they will be overwhelmed by individual issues." *Id.*; *see also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538 (2d Cir. 2016) ("The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013))).

After carefully reviewing the record, the Court finds that this action is not appropriate for class treatment because any common issues among the class members will be overwhelmed by individual questions of liability.  Plaintiffs allege that PZ Defendants violated the FLSA and the NYLL by failing to pay overtime premiums and failing to pay for all hours worked and to provide wage notices and wage statements as required by section 1951(1) and (3) of the NYLL. (FAC ¶¶ 73–90).

With respect to Plaintiffs' overtime claims, the NYLL generally provides for "one and one-half times the employee's regular rate" when the employee works more than 40 hours in a workweek.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.  The testimony of the Plaintiffs demonstrates that individualized issues of proof of liability will likely overwhelm any common issues in this case because each worker at the Jardim site had distinguishable experiences with respect to (1) whether they actually worked more than 40 hours in a workweek, and (2) whether they were not compensated for those hours.

With respect to whether each individual plaintiff worked more than 40 hours in a workweek, Plaintiff Andy Gil specifically testified that there were no set hours for workers at the Jardim site and that some tapers would leave early and others would stay and work overtime. (Ho Decl. Ex. B Gil Tr. 91:16–20).  He testified that workers were not obligated to work on weekends as well, but "whoever want[ed] to work could work."  (Ho Decl. Ex. B Gil Tr. 98:9–15).  On the other hand, Opt-in Plaintiff Caesar Colchao testified that he never worked past 5:30 pm.  (Ho Decl. Ex. C Colchao Tr. 44:1).

With respect to whether those workers were compensated for their hours, the testimony of the Plaintiffs demonstrates a significant degree of variability among the potential class members.  Mr. Colchao testified that he "almost always" got paid for the hours he worked in a

week. (Ho Decl. Ex. C Colchao Tr. 38:6). Mr. Gil testified that only "some" workers who complained about missed pay received money back. (Ho Decl. Ex. B Gil Tr. 114:1–10). And Plaintiff Rafael Hernandez testified that he *never* received his missing pay. (Ho Decl. Ex. D Hernandez Tr. 49:4–50:1).

Given the wide range of experiences of the potential class members, there is a distinct possibility that class certification would result in mini-trials with respect to each class member to determine if that individual was subject to some breach of law by PZ Defendants. Plaintiffs characterize these differences as issues that go to damages, which it asserts is not enough to impede class certification. (Pl. Br. 17–18). But whether workers were compensated for work performed in excess of 40 hours in a workweek goes to *liability*. *See* 29 U.S.C. § 207(a)(1).

Moreover, individualized issues of proof of an employee/employer relationship will be needed to establish each class member's entitlement to relief. To recover under the NYLL, Plaintiffs must prove that they were "employees" and that PZ Defendants were "employers" as defined by the NYLL. *See Pachter v. Bernard Hodes Grp., Inc.*, 10 N.Y.3d 609, 614, 891 N.E.2d 279, 282 (N.Y. 2008) ("Article 6 of the Labor Law regulates the payment of wages by employers."); N.Y. Lab. Law § 190(2) (defining employee under the NYLL as "any person employed for hire by an employer in any employment."). Courts in this Circuit regularly define employer under the NYLL in line with the definition under the FLSA. *See*, *e.g.*, *Fernandez v. Kinray, Inc.*, 406 F. Supp. 3d 256, 261 n.3 (E.D.N.Y. 2018) (collecting sources). The Second Circuit has instructed that any analysis of whether an individual is an employee covered under the FLSA or an independent contractor should be "grounded in 'economic reality rather than technical concepts,' . . . determined by reference not to 'isolated factors but rather upon the circumstances of the whole activity.'" *Saleem v. Corp. Transportation Grp., Ltd.*, 854 F.3d 131,

140 (2d Cir. 2017) (quoting *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008)). "When it comes to 'employer' status under the FLSA, control is key." *Lopez v. Acme American Env't Co., Inc.*, No. 12 Civ. 511 (WHP), 2012 WL 6062501, at *3 (S.D.N.Y. Dec. 6, 2012). To be held liable as an "employer" under the FLSA, "an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). A determination of whether a defendant is an employer is fact intensive and must ultimately "be determined on a case-by-case basis by review of the totality of the circumstances." *Id.* at 104.

The Court has carefully reviewed the potential class members' testimony and finds that class certification pursuant to Rule 23(b)(3) is not appropriate in this case because individualized questions of liability will overwhelm any possible common issues among the class members. The record clearly shows that different workers at the Jardim site were subject to different levels of control and supervision. Mr. Gil testified that the tapers worked independently on their own, (Ho Decl. Ex. B Gil Tr. 129:7–16), and that, as a foreman, he was able to individually answer all the questions he received from laborers and tapers, (Ho Decl. Ex. B Gil Tr. 134:14–20). Indeed, Mr. Gil testified that none of the tapers he supervised ever needed help or direction in performing their duties. (Ho Decl. Ex. B Gil Tr. 138:18–22). Conversely, Opt-in Plaintiff Hector Miranda testified that he *did* receive instructions from PZ Defendants regarding how to direct other workers. (Ho Decl. Ex. E Miranda Tr. 39:5–11). With regard to their work schedules, Mr. Colchao testified that the tapers independently set their own hours based on how much they wanted to work. (Ho Decl. Ex. C Colchao Tr. 40:22–42, 44:9–11). Mr. Colchao himself testified that the hours tapers chose to work "depend[ed] on the person." (Ho Decl. Ex. C Colchao Tr. 44:9–11). Mr. Gil also testified that each taper's hours varied depending on the number of hours

that each individual wanted to work. (Ho Decl. Ex. B Gil Tr. 91:6–21). But, Mr. Hernandez testified that he had no control over his work hours. (Ho Decl. Ex. D Hernandez Tr. 86:22–87:15). There is also testimony that Atlantic maintained certain employment records affirmatively stating that Atlantic was the employer of at least some employees for, *inter alia*, Medicaid purposes, (Ho. Decl. Ex. B Gil Tr. 57:23–25, 58:1–13), which is also probative of employer status. *See Irizarry*, 722 F.3d at 104–05.

Plaintiffs have not established that generalized evidence could be offered on a class-wide basis to prove an employee/employer relationship for each individual class member. The factual differences among the potential class members on issues critical to the liability of PZ Defendants highlights the need for individualized inquiries disfavoring class treatment.

In considering Plaintiffs' Motion, the Court finds guidance in the Second Circuit decision in *Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010). In *Myers*, which also involved an overtime wages labor dispute, the Second Circuit found that a district court did not abuse its discretion when it denied the plaintiffs' motion for class certification on grounds that common issues did not predominate. *Id.* at 548. The Second Circuit found that there were individualized issues as to whether each plaintiff was exempt from the FLSA requirements as a "bona fide executive." *Id.* The Second Circuit held that this was "a complex, disputed issue" whose ultimate resolution would "require the district court to decide a number of subsidiary questions." *Id.* As in *Myers*, the question of whether PZ Defendants are liable to each individual class member for overtime wages will turn on the fact intensive and highly disputed issue of whether the PZ Defendants possessed control over each individual worker at the Jardim Project. *See Irizarry*, 722 F.3d at 104. A review of the record indicates that the answer to this question very well may vary depending on the experiences of the individual class members.

After carefully reviewing all of the evidence put forth by Plaintiffs, the Court finds that "economies of time, effort, and expense" in fully resolving each plaintiff's claim will not be served by certifying a class here. *See Myers*, 624 F.3d at 547. It is clear that, should a class be certified, individual issues with respect to proof of liability would overwhelm any potential common issues among the class members. Accordingly, Plaintiffs have not satisfied the requirements of Rule 23(b) and their Motion for Class Certification is denied.

### B. Plaintiffs Have Put Forth A Notice Plan That Is Wholly Inadequate

Plaintiffs' Motion for Class Certification is also denied for the independent reason that Plaintiffs have put forth a notice plan that is wholly inadequate. "For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by . . . United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

Plaintiffs represent that about 20 percent of the potential class members have already filed consents to join this litigation. (Pl. Br. 20). Plaintiffs assert that they are unable to directly contact the remaining 80 percent of the class members because they do not have all of their contact information. (Pl. Br. 20). They also represent that they cannot get this information from the Atlantic Defendants, who held the employment records that would facilitate such contact, because they have defaulted. (Pl. Br. 20). Therefore, to satisfy the requirements under Rule 23(c)(2)(B), Plaintiffs propose the following plan: they would send text messages to the class members "that are known to Plaintiffs and the opt-in Plaintiffs," and then, for everyone else, Plaintiffs propose using targeted Facebook ads. (Pl. Br. 20).

Plaintiffs' Notice Plan is wholly insufficient. As a preliminary matter, Plaintiffs concede that they have yet to compile the "list of phone numbers of class members that are known to Plaintiffs and the opt-in Plaintiffs," to which the Notice can be sent directly via text. (Pl. Br. 20). Plaintiffs offer no explanation of why they have been dilatory in collecting this crucial information. Regardless, absent any estimate of the number of class members Plaintiffs can reach through direct text message, the Court is left with the distinct possibility that notice to the vast majority of the proposed class would be affected through mere Facebook advertisements.

The notice provision of Rule 23 is not an ancillary requirement, it is the key provision that "provide[s] minimal procedural due process protection" to absent class members whose rights may be impacted by the disposition of a case. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985). "[N]otice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 812; *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012). To satisfy this requirement, Rule 23(c)(2)(B) states that individual notice should be sent to all members "who can be identified through reasonable effort." Though the Federal Rules do not define "reasonable effort," it is clear that Plaintiffs have not put forth such a reasonable effort where they have not even compiled a list of phone numbers that they may already have in their possession. (*See* Pl. Br. 20).

"[I]t is settled law that 'for due process to be satisfied, not every class member need receive actual notice . . . as long as class counsel 'acted reasonably in selecting means likely to inform persons affected.'" *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 248 (E.D.N.Y. 2010) (quoting *In re Adelphia Commc'ns Corp. Sec. Litig.*, 271 Fed. App'x. 41, 44 (2d Cir. 2008)). Nonetheless, Courts usually require more from a Notice Plan than only targeted

13

social media ads. *See Swetz v. GSK Consumer Health, Inc.*, No. 7:20-CV-04731-NSR, 2021 WL 5449932, at *3 (S.D.N.Y. Nov. 22, 2021) (approving a Notice Plan that provided notice through social network advertising, including Facebook, but also through "a nationwide press release; direct notice through electronic mail, or in the alternative, mailed, first-class postage prepaid for identified Settlement Class Members . . . and a toll-free telephone number that provides Settlement Class Members detailed information and directs them to the Settlement Website."); *In re Scotts EZ Seed Litig.*, No. 12 CV 4727 VB, 2015 WL 5502053, at *1 (S.D.N.Y. July 7, 2015) (approving a Notice Plan that provided notice "by first class mail, email, or both," to a "high proportion of individuals in the Class," and targeted internet ads for the rest of the class members); *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *2 (E.D.N.Y. Oct. 23, 2012) (approving a Notice Plan where "notice [] was ultimately mailed to 147 members of this class . . . [and] the class notice was published in eight print publications, as well as on Facebook and on [] approximately 800 websites."). The Court finds it significant that Plaintiffs cite to no cases where Notice was provided to all potential class members through selective social media alone. (Pl. Br. 20–21).

The Court will not certify a class action lawsuit, and risk binding parties to a judgment in a case of which they are unaware, where Plaintiffs' plan to provide notice to potential class members is as deficient as it is here. As such, Plaintiffs' Motion to certify a Rule 23 Class is denied for this independent reason.

## II. The Court Grants The Motion Of Plaintiffs To Certify An FLSA Collective

In addition to seeking a certification of a class with respect to Plaintiffs' NYLL claims, Plaintiffs also seek certification of a collective with respect to their FLSA claims. The FLSA permits employees to create a collective by opting-in to a backpay claim brought by a similarly

situated employee. *Glatt*, 811 F.3d at 540. An FLSA collective differs from a Rule 23 class because plaintiffs become members of the collective only after they affirmatively consent to join it. *Id.*

One of the principal conditions to proceeding collectively under section 216(b) of the FLSA is that the named plaintiffs be "'similarly situated' to the opt-in 'party plaintiff[s].'" *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020). The Second Circuit has instructed that opt-in plaintiffs are similarly situated to the named plaintiffs where "they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 516. "It follows that if named plaintiffs and party plaintiffs share legal or factual similarities material to the disposition of their claims, 'dissimilarities in other respects should not defeat collective treatment.'" *Id.* (citation omitted). While the Court in *Scott* held that the "FLSA's similarly situated' requirement is independent of, and unrelated to Rule 23's requirements," it continued that that the inquiry under section 216(b) requires a much lower "threshold [for] demonstrating that common questions of law and fact will predominate [than] for Rule 23 purposes." *Id.* at 518 (internal quotation marks and citations omitted). Thus, the Second Circuit holds that "the FLSA not only imposes a lower bar than Rule 23, it imposes a bar lower in some sense even than Rules 20 and 42, which set forth the relatively loose requirements for permissive joinder and consolidation at trial." *Id.* at 520.

Plaintiffs have satisfied the similarly situated requirement of section 216(b) and a collective can be certified. Plaintiffs allege that Defendants failed to pay Plaintiffs and the Opt-in Plaintiffs required overtime in compliance with the FLSA. (FAC ¶¶ 48, 49, 54, 57, 71). Plaintiffs have supported these allegations with the declarations of the named Plaintiffs and some of the potential opt-in plaintiffs. Plaintiffs have put forth evidence that all of the potential opt-in

plaintiffs worked at the same construction site from about March 2018 (*see* Harrison Decl. Ex. H Colchao Tr. 18:10-19:12; Harrison Decl. Ex. G Gil Tr. 27:14-18, 57:2-9), to about March 2019, (*see* Harrison Decl. Ex. I Miranda Tr. 29:4-8; Harrison Decl. Ex. E Campoccia Tr. 23:24-24:5; Aguirre Decl. ¶ 6).  Many of the workers testified that they were not paid overtime at the Jardim Project for work in excess of forty hours in a workweek, (Sarabia Decl. ¶¶ 16, 19; Familia Decl. ¶¶ 16, 22, 26; Portillo Decl. ¶¶ 19, 22; Aguirre Decl. ¶¶ 12, 29, 32; Juarez Decl. ¶¶ 16, 19), and that they were not provided with wage statements or wage rate notices in compliance with the NYLL, (Sarabia Decl. ¶¶ 17–18, 20; Familia Decl. ¶¶ 25, 27; Portillo Decl. ¶¶ 21, 23; Aguirre Decl. ¶¶ 29, 33; Juarez Decl. ¶¶ 17, 20).  Defendants do not contest this evidence.  (*See* Def. Opp'n).  Plaintiffs also support their allegations with documentary evidence demonstrating that all workers' were tracked in the same manner at the job site.  (Harrison Decl. Ex. D, Timesheets for the period from 9/17/18 – 9/22/18; Harrison Decl. ¶ 7).  Accordingly, Plaintiffs have established that the Opt-in Plaintiffs "share a similar issue of law or fact material to the disposition of their FLSA claims." *Scott*, 954 F.3d at 515.

In opposition to Plaintiffs' Motion, Defendants merely cite to one other district court case, *Zivali v. AT&T Mobility*, LLC, 784 F. Supp. 2d 456 (S.D.N.Y. 2011), in which the court denied an FLSA collective on the grounds that the plaintiffs' claims all involved highly individualized situations.  *Id.* at 464.  However, *Zivali* was decided prior to the Second Circuit's decision in *Scott*.  *See id.* at 460 ("[T]he Second Circuit has yet to prescribe a particular method for determining whether members of a class are similarly situated").  *Zivali* is also factually distinct from this case.  *Zivali* involved "4,100 opt-in plaintiffs . . . [in] an extremely wide variety of factual and employment settings among the individual plaintiffs, managers, and retail stores."

*Id.* at 459. Here, there are only about forty opt-in plaintiffs and all of them worked at the same location during the Class Period.

## **CONCLUSION**

Plaintiffs' Motion to certify an FLSA collective pursuant to section 216(b) of the FLSA is GRANTED. Plaintiffs' Motion to certify their NYLL claims as a class action pursuant to Rule 23 is DENIED.

The Court directs counsel for all parties to appear at a pretrial conference on May 17, 2022 at 10:30 AM.

The parties shall file their proposed joint pretrial order on or before May 10, 2022. The parties shall consult the Court's Individual Practice Rule § 7.A. and ensure compliance therewith. The required pretrial filings outlined in Section 7.B of the Court's Rules need not be filed with the proposed joint pretrial order. The Court will set a deadline for these submissions at a later date.

At the pretrial conference the parties should be prepared to discuss their proposed joint pretrial order, trial scheduling and logistics, deadlines for pretrial filings outlined in Section 7.B. of the Court's Individual Practice Rules, and all other pretrial matters. The parties should consult the Court's Individual Practice Rules and ensure compliance therewith.

The Clerk of Court is respectfully requested to terminate docket entry 135.

**SO ORDERED.**

**Date:  March 31, 2022**                                        _____
**New York, NY**                                                  **MARY KAY VYSKOCIL**
                                                                               **United States District Judge**